NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
  **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:  (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 28, 2018

**UPLOADED**
Michael Caccavelli, Esq.
Zipp Tannenbaum & Caccavelli, L.L.C.
280 Raritan Center Parkway
Edison, New Jersey 08837

Jason A. Cherchia, Esq.
O'Donnell McCord, P.C.
1725 Highway 35, Suite C
Wall, New jersey 07719

> Re:  Gramiccioni, Christopher & Deborah v. Township of Wall
> Block 271, Lot 28.09
> Docket Nos. 008159-2016; 004900-2017

Dear Counsel:

This letter constitutes the court's decision following trial of the above captioned matter.

Plaintiffs own a residence, the above-captioned property ("Subject"), in defendant ("Township").

For tax year 2016, plaintiffs petitioned the Monmouth County Board of Taxation ("County

Board"), which affirmed the Subject's local property tax assessment of $744,600 (allocated

$270,000 to land, and $474,800 to improvements), using judgment code 2B ("presumption of

correctness not overturned").  For tax year 2017, the Subject was imposed the same assessment of

$744,600.  The County Board affirmed the assessment using judgment code 6A ("hearing waived

due to prior year's appeal pending in the Tax Court").  Plaintiffs filed timely complaints

*

challenging the County Board's judgments for each tax year. Per the Township's expert's report, the average ratio for each tax year was 100%.

For the reasons stated below, the court reduces the assessment to $690,000 and $700,000 for each respective tax year.

**FACTS**

Testimony was provided by one of the plaintiffs (husband), and the Township's expert. The Subject is a single family, two-story colonial style home located on a one-acre lot. Built in 1998, its total gross living area ("GLA") is 2,982 square feet ("SF"). Plaintiffs purchased the Subject in 2007 for $819,000. It is located in a residential zone R-30.

The Subject has five bedrooms (the fifth one was mother-daughter area, which plaintiffs converted into a bedroom) and three bathrooms (one with a Jacuzzi). There are two gas-fired pre-fabricated fireplaces and one small wood burning stove. The first floor areas have faux wood, and the second floor bedrooms are carpeted. The full basement is partly finished. There is also an attached two-car garage. Amenities include a deck, a cement patio, and an in-ground pool with a fiberglass shell and a diving board, which is the same age of the house. There is also a wet bar in the den. Plaintiff provided some photographs of the Subject. Other than the garage, the areas appear to be in average to good condition. The exterior photograph showed the Subject's front, which appear to be in good condition (a portion being brick). According to plaintiff, since purchasing the home, the only renovations have been new kitchen cabinets, countertops, building the deck, and painting the home. The Subject is in a cul-de-sac, with its back facing Route 35, which is a very busy highway, currently undergoing construction.

Plaintiffs relied upon three sales of single-family residential properties which they deemed comparable since they were all located in the Township, in the same zone (R-30), and one on the

same street as the Subject. Plaintiffs' data source was the multiple listing service ("MLS") website, property record cards maintained by the assessor's office, and information from the County Board's website. All comparables are similar to the Subject, they were colonial styled two-storied homes, had two-car attached garages, and central air-conditioning. They were built in 1994; 1992; and 1999, respectively, thus, about the same age as the Subject. Plaintiff had personally visited all three comparables, and was able to verify the accuracy of the photographs of the comparables on the MLS website. The sales were as follows:

| Address | Lot | GLA | Sale Date | Price | Room | Amenities |
|---|---|---|---|---|---|---|
| 1488 Garrett Dr | 0.68 ac | 2,900 SF | 12/29/14 | $640,000 | 4 beds; 3 baths | Cathedral ceiling; hardwood floors; Jacuzzi; two pre-fab fireplaces; full finished basement; partial brick-front; open porch; deck. |
| 1454 Garrett Dr | 1.24 ac | 3,056 SF | 01/31/14 | $610,000 | 4 beds; 3 baths | Cathedral ceiling; hardwood floors; Jacuzzi; one pre-fab fireplace; full partially finished basement; brick-front; patio; in-ground pool; deck |
| 1926 Troy Dr | 0.69 ac | 3,164 SF | 07/10/15 | $675,000 | 5 beds; 3 baths | Cathedral ceiling; hardwood floors; Jacuzzi ; 2-stories high, one brick fireplace in family room; second staircase to great room; full partially finished basement; deck; patio; porch |

Comparable 1, according to plaintiff was very similar to the Subject except for the covered porch. Thus, its foyer, kitchen with the island (though larger than the Subject), bathroom, family room, and the general condition, were similar to the Subject. He noted that the comparable was located in a horseshoe shaped road, thus, on a much quieter street, in a development called Bailey's Corner Estates. It was on the market for 92 days.

Comparable 2 which is in the same neighborhood as Comparable 1. According to plaintiff, this house, which is 1.7 miles from the Subject, had more modern amenities and upgrades than the Subject, including a modern pool with landscaping, and a larger patio. The MLS pictures show

the exterior style to be almost the same as the Subject's, except for the addition on the Subject's second floor. The comparable was on the market for 185 days. Comparable 2's back abuts onto land designated as green acres.

Comparable 3 is two houses down the and on the same side of the street as the Subject, about 0.1 miles in distance, thus, also in a cul-de-sac. According to plaintiff, the house had several upgrades (such as a fancier patio and pristine landscaping). It was on the market for four days and under contract for 88 days. Plaintiff was unaware of the reason for Comparable 3 being on the market for only 4 days. According to the Township's expert, who confirmed the details of the sale with the selling broker, the comparable was priced to sell quickly between two-to-six weeks. However, other than this factor, there was nothing to suggest that the sale was a non-arms-length sale.

Plaintiff conceded that he had not personally reviewed the sale deeds for any comparables. He desired a reduction in the Subject's assessment to $635,000, based on the unadjusted sale prices of the three comparables, maintaining that no significant adjustments would be needed because they were similar in style, age, location, GLA, and amenities to the Subject.

The Township's expert used six comparables (one of which was the same as plaintiffs' comparable 3), all of which were colonial styled two-storied homes, had two-car attached garages, central air-conditioning, and in the same R-30 zone as the Subject. They were built in the mid-to-late 1990s, and about the same age as the Subject. He confirmed the sale details with the respective real estate brokers. He did not personally inspect the interior of any comparable, however, stated that he confirmed with the real estate brokers that the photographs of the comparables, as depicted on the MLS website, were accurate portrayals of the comparables. The improved comparable sales that he used are as follows:

4

| | Address | Lot | GLA | Date | Price | Room | Amenities |
|---|---|---|---|---|---|---|---|
| 1 | 1926 Troy Dr | 0.69 ac | 3,164 SF | 07/10/15 | $675,000 | 5 beds; 3 baths | Deck; patio; fireplace; full partially finished basement |
| 2 | 1480 Garrett Dr | 0.71 ac | 2,880 SF | 05/29/15 | $719,000 | 4 beds;2½ baths | Pool; deck; fireplace; full unfinished basement |
| 3 | 2036 Fox Fld | 0.70 ac | 3,116 SF | 08/31/15 | $620,000 | 5 beds;2½ baths | Pool; deck; fireplace; full unfinished basement |
| 4 | 1928 Troy Dr | 0.71 ac | 3,732 SF | 08/13/16 | $740,000 | 5 beds;3½ baths | Pool; patio; porch; fireplace; full partially finished basement |
| 5 | 1446 Garrett Dr | 0.85 ac | 3,164 SF | 08/22/16 | $752,000 | 4 beds;2½ baths | Deck. Patio; pool; fireplace; full unfinished basement |
| 6 | 1484 Garrett Dr | 0.68 ac | 3,016 SF | 07/28/16 | $695,000 | 4 beds;2½ baths | Deck. Patio; pool; fireplace; full unfinished basement |

He provided adjustments for GLA difference (at $100 per SF); bathroom count ($20,000 for full and $10,000 for half); finished basement ($5,000); pool ($10,000). The adjustments for GLA and the amenities were derived from Marshall & Swift's cost information, adjusted by multipliers and reduced for depreciation. The expert also adjusted for lot size differences using sales of four vacant buildable lots to extract an adjustment for "excess acreage" at $100,000 per acre. These sales are:

| Address | List Price | Sale Price | Sale Date | Size | DOM |
|---|---|---|---|---|---|
| 2502 Kipling Ave | $239,900 | $250,000 | 06/29/16 | 0.25 ac | 4 |
| 1311 Allaire Rd | $350,000 | $285,000 | 09/14/16 | 2.29 ac | 1398 |
| 1323 Magnolia Av | $225,000 | $225,000 | 04/16/15 | 0.17 ac | 29 |
| 1550 Meetinghouse Rd | $285,000 | $282,500 | 06/27/14 | 0.75 ac | 0 |

He used comparables 1 to 3 for tax year 2016 and adjusted their sale prices as follows: For each comparable he increased the sale prices for the smaller lot size $31,000 (comparable 1); $28,600 (comparable 2); and $30,000 (comparable 3). For comparables 1 and 3 he reduced the sale prices for the larger GLA by $21,200 and $16,400, respectfully. To comparable 2 and 3, for

the unfinished basement, he increased the sale prices by $5,000 each, and for the half-bathroom less an increase of $10,000 each. For comparable 1's quick sale, he increased the sale price by 10% or $67,500. To comparable 3, for its inferior condition, a reduction to its sale price by 10% or $62,000. The adjusted sale prices were $762,300 (comparable 1); 762,600 (comparable 2); and $710,000 (comparable 3) from which he derived a value of $745,000 for the Subject for tax year 2016.

He used comparables 4 to 6 for tax year 2017 and adjusted their sale prices as follows: to each comparable for the smaller lot size, an increase of the sale prices by $29,000 (comparable 4); $14,300 (comparable 5); and $31,100 (comparable 6). To adjust for the bathroom count, a decrease of $10,000 to comparable 4's sale price, and an increase of $20,000[1] to the sale prices of comparables 5 and 6. For the larger GLA a reduction of $78,000 (comparable 4); $21,200 (comparable 5); and $6,400 (comparable 6). Further, he increased the sale prices of comparables 5 and 6 by $5,000 each for the comparables' unfinished basement. The adjusted sale prices were $688,000 (comparable 4); $770,000[2] (comparable 5); and $744,700[3] (comparable 6), from which he concluded a value of $745,000 for the Subject for tax year 2017.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the

---

[1] This is incorrect since he had assigned $10,000 as an adjustment for a half-bath.
[2] Due to the incorrect adjustment for the half-bathroom lesser count, the total adjusted price should be $760,000.
[3] Due to the incorrect adjustment for the half-bathroom lesser count, the total adjusted price should be $734,700.

6

contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998).

A taxpayer can rebut the presumption by introducing "cogent evidence" which is evidence that is "'definite, positive and certain in quality and quantity.'" Pantasote, 100 N.J. at 413 (citing Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)). Plaintiff must present the court with "evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment." MSGW, 18 N.J. Tax at 376. Disagreement with an assessment must be based on "sound theory and objective data," rather than on "mere wishful thinking." Ibid. (internal quotations marks omitted).

Where the court has decided that the presumptive correctness is overcome (as it did here at the end of plaintiffs' proofs, by denying the Township's motion to dismiss under R. 4:37-2), it can find value based "on the evidence before it and the data that are properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

Both parties used the market approach (comparable sales), which is reasonable since it is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

Plaintiffs' 2014 sales for both tax years are two to four years earlier than each respective assessment date, and considering the fact that there were other available sales in 2015 and 2016, they will be given less weight for tax year 2016, and no weight for tax year 2017.[4] The Township's adjustments for amenities are properly substantiated and will be accepted. The court agrees with plaintiffs that a 200 SF difference in GLA does not require an adjustment due to the negligible impact on the sales prices for this area, although the Township's expert's method for extracting a per SF amount was objectively supported, and will be used only to adjust his comparable 4 (for tax year 2017) since 780 SF is a considerable size difference in GLA.

The court finds problematic the Township's expert's upward adjustment of 10% for the commonly used comparable (1926 Troy Drive) for its "priced-for-quick-sale" factor. According to the expert, in 2015 and in 2016, homes in the Subject's neighborhood were all selling for over $700,000, as evidenced by his five other comparable sales, with a typical time for market exposure of seven months. Therefore, per the expert, this comparable was underpriced requiring an increase in its sale price by 10% (based on the range of the per SF sales prices of the other comparables). However, this theory is unpersuasive. First, it presumes that the court will accept the adjustments, which increased the sale prices. Second, it is not supported by the unadjusted sale prices of the expert's comparables 2 and 3, both of which were located in the Subject's neighborhood, and sold for $719,000 and $620,000, respectively. Even if it were contended that the $620,000 comparable should really be $680,000 (since the expert provided an upward 10% adjustment for its inferior condition), it would still be below the alleged over $700,000 sale prices and indeed, closer to the sale price of the commonly used comparable). Additionally, even if one were to consider the 2016

---

[4] The unadjusted sale prices of plaintiffs' three comparables also show a trend of a price increase, thus, it also could be true that the 2014 sales would require a positive adjustment for market conditions.

sales as a justification for the adjustment (keeping in mind that the assessor only used sales in 2015 for tax year 2016), comparable 6 sold for less than $700,000. More importantly, if the adjustment is to make up for the alleged low-pricing or lack of market exposure, then it casts doubt as to whether it is even a suitable comparable in the first place. Therefore, the expert's 10% subjective adjustment to the commonly used comparable's sale price is rejected.

The court is also not persuaded that the expert's comparable 3 should be adjusted upward by $62,000 for inferior condition. First, the expert relied upon the MLS pictures for this conclusion, and the broker's statement that the comparable was dated. Second, a comparison of the MLS pictures of this comparable with the pictures of the Subject tells this court that the comparable's interior appears to be in a similar condition as that of the Subject, which this court has found to be in an average to good condition. Therefore, this adjustment for an inferior condition as compared to the Subject is rejected.

As to the lot size adjustment, the court finds it problematic due to the source of the data. There was no information whether the land sales were located in the same R-30 zone as the Subject (which per the Township's zoning ordinance has a minimum lot requirement of 30,000 SF or about 0.68 acres). The first and third lots were sized 0.25 and 0.17 acres. The court has no information whether these would be even considered as buildable lots in the R-30 zone.[5] While land sale #2 had 2.29 acres (although the zone is unknown), it is problematic because it was sold as one lot, with a promise, but no certainty of obtaining a minor sub-division (with a variance) to split it into two buildable lots. Thus, as of its September 2016 sale date, it is unclear why the expert would

---

[5] The County Board's website lists the land sale with a non-usable ("NU") code 10 ("sale by guardians, trustees, executors, and administrators"). Land Sale #2 was also marked as NU-10.

deem this to be a "similar sized buildable lot" as either the Subject or the other land sale comparables. Land sale #4 is not credible since it was not even exposed to the market.[6]

Based on the above analysis of adjustment removals, the adjusted sale prices of the expert's comapables 1 to 3 are $685,000; $734,000; $635,000. Placing least emphasis on plaintiffs' 2014 comparables due to their remoteness to the assessment date, and most weight to sales closer to the assessment date, the court finds Subject's value for 2016 as $690,000.

For tax year 2017, with similar removals of adjustments, but retaining an adjustment for the 780 SF of GLA difference between the Subject and the expert's comparable 4, since this is a sizable difference, and also reducing the half-bathroom adjustment, which is incorrectly by listed the expert as $20,000 instead of $10,000 in comparables 5 and 6, the adjusted sale prices of the expert's comapables 4 to 6 are $652,000; $767,000; and $710,000. Placing equal weight to the three sales, and none to plaintiffs' 2014 comparables, due to their remoteness to the assessment date, the court finds the Subject's value in 2017 to be $700,000.

**CONCLUSION**

For the aforementioned reasons, the court reduces the 2016 and 2017 assessments of the Subject to $690,000 and $700,000, respectively. An Order and final judgment will be entered accordingly.

Very truly yours,

Mala Sundar, J.T.C.

---

[6] Plaintiffs' argument that a difference of 0.3 acres in a neighborhood, which requires 0.68 acre lot sizes, should not require adjustment is well-taken. A review of both parties comparables does not appear to support a conclusion that the market for homes located on lots sized about .70 acres will pay additional monies for a lot size difference of 0.30 acres.